392 So.2d 934 (1980)
Martha S. CONROY, Appellant,
v.
Andrew Jackson CONROY, L. Guerry Dobbins, Jr. and Walter W. Manley, II, Appellees.
Nos. 79-576, 80-822.
District Court of Appeal of Florida, Second District.
December 19, 1980.
J. Russell Hornsby of Law Offices of J. Russell Hornsby, Orlando, for appellant.
R. Philip Haddock, Lakeland, for appellee Andrew Jackson Conroy.
*935 L. Guerry Dobbins, Jr. and Walter W. Manley, II, pro se.
GRIMES, Acting Chief Judge.
These are consolidated appeals from orders imposing a charging lien upon the proceeds of a judgment obtained by attorneys for their client and held by them in their trust account.
Martha S. Conroy retained the law offices of Walter W. Manley to represent her in dissolution proceedings. When Mr. Manley died, Walter W. Manley, II and L. Guerry Dobbins, Jr., his successors in interest in the law firm, continued to represent Mrs. Conroy.
At the trial, Mrs. Conroy's attorneys sought to have her husband pay her attorneys' fees, and they furnished testimony concerning the amount of a reasonable fee. However, the court concluded that Mrs. Conroy had sufficient funds to pay her own attorney. The court determined that $16,000.00 was a reasonable fee and ordered Mrs. Conroy to pay it.
Mrs. Conroy appealed certain aspects of the final judgment to this court. We affirmed the judgment in all respects except that we held that the court had no authority, absent a claim for a charging lien, to require a party to pay his or her attorney for representation during that proceeding. Conroy v. Conroy, 370 So.2d 1188 (Fla. 2d DCA 1979). Our opinion included a footnote which observed that subsequent to the entry of the final judgment, Mrs. Conroy's counsel had made a claim for a charging lien, and we suggested that once our mandate had gone down, the attorneys would be able "to pursue this remedy or seek redress in a separate action." 370 So.2d at 1189 n. 1.
Following the issuance of our mandate, Mrs. Conroy's attorneys did pursue their claim for a charging lien. During the course of the litigation, the sum of $19,724.42 had been deposited in the attorneys' trust account pursuant to stipulation of the parties to abide the outcome of the suit. The entitlement to these funds, which were the proceeds of a purchase money note and mortgage, was in dispute. The attorneys' petition to establish a charging lien was directed to these funds because the trial judge had awarded them to Mrs. Conroy in the judgment of dissolution.
The court granted the attorneys' petition and retained jurisdiction to determine the amount of the lien. Following another hearing, the court held that $19,300.00 was a reasonable fee for the attorneys' services through the entry of the final judgment. After adding interest and costs and deducting the amount of an initial retainer, the court imposed a charging lien of $22,168.42 upon any of Mrs. Conroy's funds in the possession of her attorneys.
The amount of the fee is not an issue in this appeal. Furthermore, while Mrs. Conroy disputes it, Mr. Manley testified that he made it clear to her that she would be obligated to her attorneys for a reasonable fee, though they would endeavor to have the court require her husband to pay it. Therefore, the significant issue on this appeal is not whether Mrs. Conroy owes the attorneys a fee but whether the court could impose a charging lien on the proceeds of the judgment held in trust for her in the absence of any agreement on her part that the fee would come from these proceeds.[1]
Generally speaking, a charging lien gives an attorney the right to recover his fees and costs from the funds recovered through his services. Webster v. Sweat, 65 F.2d 109 (5th Cir.1933); Royal Insurance Co. v. Simon, 20 Del. Ch. 297, 174 A. 444 (1934). Rather than depending upon the *936 attorney's possession of the property, it is founded upon the equitable notion that an attorney ought to receive his fees and disbursements out of the judgment he has obtained. Tracy v. Ringole, 87 Cal. App. 549, 262 P. 73 (1927); 7 Am.Jur.2d Attorneys at Law § 324 (1980). Florida has long recognized the right to an attorney's charging lien. In re Barker's Estate, 75 So.2d 303 (Fla. 1954); Winn v. City of Cocoa, 75 So.2d 909 (Fla. 1954); Carter v. Davis, 8 Fla. 183 (1858); Chancey v. Bauer, 97 F.2d 293 (5th Cir.1938). Yet, in cases involving the recovery of real estate, our supreme court has held that before a court may impose a charging lien, there must have been an express or an implied agreement that the attorney would be entitled to recover his fee out of the proceeds of the judgment. Billingham v. Thiele, 109 So.2d 763 (Fla. 1959).
In Stern v. Stern, 50 So.2d 119 (Fla. 1951), the court refused to require the husband to pay his wife's attorneys' fees but awarded her attorneys a fee of $1,500.00 to be secured by a lien on her undivided half interest in the parties home. The home had been owned as tenants by the entirety, and the final judgment decreed that the ownership would thenceforth be as tenants in common. In reversing the judgment in part, the supreme court said:
We find no error in the fee awarded plaintiff's solicitors but we fail to find support for that part of the final decree retaining jurisdiction of the cause to "award plaintiff's solicitors a lien upon plaintiff's undivided half interest in and to said real estate for any sums remaining due them on account thereof." There are cases in which an attorney's lien for services may be impressed and enforced in equity, as when his contract so provides or when he collects money and moves promptly to safeguard his lien, but such a lien ordinarily conveys no interest in the rem that may be enforced at law. Nichols v. Kroelinger, Fla., 46 So.2d 722, 723. The rule is that when a man seeks a divorce from his wife and she is without funds, he is required to bear the cost of the litigation including the wife's solicitors' fees. Since the record shows that the plaintiff was without means this case is amenable to that rule. The fact that the parties could not readjust themselves to it and make a success of the marriage venture does not relieve the man of the wife's claim for the expenses of the litigation.
50 So.2d at 120. The court cited Stern with approval in Lamoureux v. Lamoureux, 59 So.2d 9 (Fla. 1951), and later our court in Wilkerson v. Wilkerson, 179 So.2d 592 (Fla.2d DCA 1965), purported to follow the principle of Lamoureux in holding that the husband's attorney was not entitled to a charging lien in the husband's interest in certain corporate stock which had been the subject of the litigation.
Mrs. Conroy argues that this line of cases stands for the proposition that an attorney may never obtain a charging lien unless there is an agreement that the fee would be paid from the proceeds of the litigation. She also suggests that even if a prior agreement is not always required where the recovery of personal property is involved, these cases hold, at the very least, that there can be no charging liens imposed in divorce actions.
We do not construe these cases so broadly. In the first place, the attorney had actually made no recovery of property in the Stern case because the final judgment merely had the effect of converting a tenancy by the entirety into a tenancy in common. Moreover, the lien sought to be imposed was on real estate which can never be the subject of a charging lien in Florida anyway. Our study of Lamoureux leaves us with no clear conviction of what that case held. If the court was saying that the attorney had to bring a separate action at law to obtain his charging lien, the same court permitted the imposition of a charging lien ancillary to the primary action just two years later in Winn v. City of Cocoa.[2] *937 Our holding in Wilkerson is distinguishable on the basis that there had never been a hearing on the issue of whether the attorney was entitled to a charging lien. Thus, that case was in much the same posture as was the present case on its first appearance before our court.
There is no Florida case which has specifically held that an agreement for the fee to be paid from the recovery is unnecessary for a charging lien on a judgment not involving real estate.[3] However, a number of Florida decisions have upheld the imposition of a charging lien without mentioning such an agreement and under circumstances which suggest that there probably wasn't any agreement. In re Barker's Estate; Winn v. City of Cocoa; Carter v. Davis; de la Cruz v. Brown, 338 So.2d 245 (Fla.3d DCA 1976); Worley v. Phillips, 264 So.2d 42 (Fla.2d DCA 1972); Kurzweil v. Simon, 204 So.2d 254 (Fla.3d DCA 1967). Accord, Chancey v. Bauer.
There seems to be little distinction between a judgment which recovers real estate on the one hand and a judgment for money or the recovery of personal property on the other. Therefore, it would not be illogical to hold that, as in the case of real estate, there must be an agreement to pay the fee out of the proceeds of the recovery before an attorney can obtain a charging lien on a judgment involving personal property. However, because we see so little to commend in the rule with respect to real estate, we are not inclined to extend it. Rudimentary fairness dictates that an attorney ought to be able to obtain his fee from property which he has recovered for his client when the very services for which he seeks to be paid were instrumental in securing that recovery. We hold that in order for an attorney to obtain a charging lien upon a judgment which involves personal property, it is unnecessary for him to prove that there was an agreement with the client for the proceeds to be paid from the recovery. Of course, the attorney must prove that he had a valid contract with the client to render services but this can be satisfied by a showing that when he undertook the representation, there was an implied understanding that the client would pay him a reasonable fee.
With respect to whether charging liens are inappropriate in divorce actions, we are impressed by the rationale of Campanello v. Mason, 571 P.2d 449 (Okl. 1977), in which the Oklahoma Supreme Court said:
In the case before us, the action taken by attorney Mason in the bringing of the divorce case, has resulted in his client receiving free and clear title to the property awarded to her in the division of property. We see no reason to deny a lien on such property, merely because property was awarded in a divorce action. The theory of an attorney's lien is to allow the attorney to insure the payment of fees due for his services. The mere fact that the "fruits of his services" were awarded in a divorce action, makes those "fruits" no less real or tangible than property acquired in other types of litigation. Nor does such a fact lessen the skill and effort exercised on the part of an attorney.
571 P.2d at 451. See also Hubbard v. Ellithorpe, 135 Iowa 259, 112 N.W. 796 (1907). We perceive no impediment to the placing of a charging lien on Mrs. Conroy's property *938 in this case simply because it involved a dissolution proceeding.[4]
AFFIRMED.
DANAHY and CAMPBELL, JJ., concur.
NOTES
[1] An argument might have been made that the monies held in the attorneys' account were subject to a retaining lien. Attorneys' retaining liens attach to the property of a client which comes into his attorney's possession and can be used to enforce all debts owed by the client to the attorney regardless of whether the property related to the matter for which the money is owed to the attorney. Brauer v. Hotel Assocs., Inc., 40 N.J. 415, 192 A.2d 831 (1963). However, since the parties and the court below considered the matter only from the standpoint of a charging lien, we shall do likewise.
[2] Cf. de la Cruz v. Brown, 338 So.2d 245 (Fla.3d DCA 1976), in which the court rejected the contention that the attorney must resort to a separate action at law in order to preserve the right to trial by jury.
[3] A number of jurisdictions hold that an agreement to pay the fee out of the recovery is always a prerequisite to the imposition of a charging lien. Therefore, some courts have had to go to great length in trying to distinguish between agreements which provide for a certain percentage to be paid out of the fund recovered and those which merely call for the payment of a sum equal to a certain percentage of the fund recovered. See Gelfand, Greer, Popko & Miller v. Shivener, 30 Cal. App.3d 364, 105 Cal. Rptr. 445 (1973).
[4] We do not pass upon the propriety of a charging lien upon alimony or support.