517 So.2d 88 (1987)
Bernard LITMAN, Appellant,
v.
FINE, JACOBSON, SCHWARTZ, NASH, BLOCK & ENGLAND, P.A., Appellee.
No. 86-2822.
District Court of Appeal of Florida, Third District.
December 22, 1987.
*90 Lapidus & Frankel and Richard L. Lapidus, Miami, for appellant.
Fine Jacobson Schwartz Nash Block & England and Arthur J. England, Jr. and Theodore Klein and Charles M. Auslander, Miami, for appellee.
Before DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
We affirm the final judgment entered for the law firm of Fine Jacobson Schwartz Nash Block & England, P.A. (Fine Jacobson). In so doing, we reject Litman's two contentions: that the attorneys were not entitled to a charging lien for fees for services rendered in their successful representation of him in the underlying case, and that he was deprived of a jury trial when the trial court determined that the attorneys were entitled to a judgment for fees.

I.
The antecedent to the present case is an earlier lawsuit in which the law firm of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A. (Podhurst Orseck) obtained for Bernard Litman a substantial money judgment in a breach of contract action. When Litman's brother, Seymour Litman, a lawyer, claimed $216,000 of the money judgment under a contract he allegedly had with Bernard to render legal services in the matter, Podhurst Orseck brought an interpleader action to determine the respective rights of Bernard and Seymour to the interpleaded fund. At this juncture Bernard engaged Fine Jacobson to represent him against Seymour.
The interpleader action resulted in another decision in Bernard's favor  a judgment that Seymour had no right to any portion of the fund. Perhaps overcome by the sweet smell of success, Bernard then refused to pay the balance of the attorney's fees claimed by Fine Jacobson,[1] and Fine Jacobson moved for the imposition of a charging lien.[2] Litman moved to dismiss on the grounds that, first, no charging lien exists in the absence of a contingent fee contract and, second, Fine Jacobson's efforts on Litman's behalf did not, as is required, produce a positive judgment for Litman, but merely preserved that which had been recovered by Litman's former attorneys. The trial court denied Litman's motion to dismiss, struck his separate request for a jury trial, conducted an evidentiary hearing, and entered a final judgment for Fine Jacobson. Litman appeals.

II.
Virtually every jurisdiction in the United States recognizes the right of an attorney to recover fees by imposing a lien on a *91 judgment obtained by his efforts for his client. See Scott v. Kirtley, 113 Fla. 637, 152 So. 721 (1933); Note, Attorney and Client: Attorney's Charging Lien, 4 U.Fla.L.Rev. 58 (1951) [hereinafter Note]. Although Florida, unlike many American jurisdictions, has not codified this common law lien, its courts have long acknowledged the appropriateness of such a lien and the justification for allowing resolution by proceedings in equity:
"The law is settled in this jurisdiction that a litigant should not be permitted to walk away with his judgment and refuse to pay his attorney for securing it. It is further consistent with law that an attorney's lien in a case like this be enforced in the proceeding where it arose. The parties are before the court, the subject matter is there, and there is no reason whatsoever why they should be relegated to another forum to settle the controversy."

In re Warner's Estate, 160 Fla. 160, 464, 35 So.2d 296, 298-99 (1948) (citations omitted).
"A lawyer's compensation, like that of every man who labors, is his bread and butter. When his contract is completed he is entitled to his pay and should not be forced to a suit to collect it. Such controversies are to be avoided so far as compatible with self-respect and his right to reasonable compensation for his services. Litigation to recover a fee is very embarrassing and is never resorted to except in cases to prevent injustice, imposition or fraud. An attempt to evade payment of an attorney's fee comes in poor grace after the work is done, the results accomplished and there is no question of bona fides."

In re Barker's Estate, 75 So.2d 303, 304 (Fla. 1954) (citation omitted).
More concisely, the charging lien is "an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1384 (Fla. 1983).

A.
As Sinclair, Louis tells us, the requirements for the imposition of a charging lien are few and simple. There must be an agreement  written or oral, express or implied  between the attorney and the client that the attorney will proceed with the suit and that he will be paid for his services. The fees agreed upon may be based on a percentage of any monetary recovery, In re Barker's Estate, 75 So.2d 303, or may be contingent upon recovery, Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (1945), or there may be no agreement as to the amount of the fee or its source, Scott v. Kirtley, 152 So. 721, in which case the court may determine a reasonable fee. See generally Note, 4 U.Fla.L.Rev. 58. Thus, contrary to Litman's first contention, it is not necessary that the agreement provide that the fees be paid from the recovery. Conroy v. Conroy, 392 So.2d 934 (Fla. 2d DCA 1980).[3]

B.
It is not enough, however, to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive *92 judgment or settlement[4] for the client, since the lien will attach only to the tangible fruits of the services. Sinclair, Louis, 428 So.2d at 1385; Pasin v. Kroo, 412 So.2d 43 (Fla. 3d DCA 1982) (error to impose charging lien on money received by client from sale of condominium where attorney unsuccessfully defended client in suit for specific performance of condominium sale contract). And although it is said that a charging lien attaches to the judgment, see Note, 4 U.Fla.L.Rev. at 60, where there are no proceeds of the judgment, there is nothing to which a lien may, as a practical matter, attach. See Pasin v. Kroo, 412 So.2d 43 (lien may issue only if attorney has in fact recovered proceeds); Kucera v. Kucera, 330 So.2d 38 (Fla. 4th DCA 1976) (noting that money deposited by client with his attorney during pendency of dissolution action would not be proper subject of charging lien as not being proceeds of a judgment).[5]
*93 If, then, the attorney has obtained a favorable judgment or settlement for the client which results in what the law recognizes as proceeds, the attorney has merely to assert timely a claim of lien[6] in the case to become entitled to a determination by the court, sitting without a jury, of the amount of attorney's fees due.[7]Kozich v. Kozich, 501 So.2d 1386 (Fla. 4th DCA 1987). Finally, we reject Bernard Litman's contention that Fine Jacobson merely preserved that which had been recovered *94 by Podhurst Orseck. Bernard Litman was not entitled to the interpleaded funds, even though they originated from the initial breach of contract action, until Seymour Litman's claim of entitlement was favorably resolved through the efforts of Fine Jacobson. Thus, Fine Jacobson produced for Bernard Litman a second positive judgment, against which their charging lien can be enforced.

III.
All of the requirements for the existence and enforcement of a charging lien having been met in the present case, the trial court correctly proceeded in equity to enter judgment on the lien for the attorneys.
Affirmed.
NOTES
[1] Pursuant to court order, Podhurst Orseck delivered to Fine Jacobson a check for approximately $242,000, payable to both Bernard Litman and Fine Jacobson. Litman, disputing the fees, refused to endorse the check. At Litman's request, Fine Jacobson returned the check to Podhurst Orseck, which then in accordance with an agreement between Litman and Fine Jacobson disbursed the undisputed amount of approximately $195,000 to Litman and retained the remainder in its trust account, to be released upon the joint direction of Litman and Fine Jacobson or by court order.
[2] Fine Jacobson also asserted a retaining lien which Litman challenged on the ground that no retaining lien exists where the attorney is not in possession of the money. We think the law supports Litman's position.

While Fine Jacobson argues that its relinquishment of the check at Litman's request still left Fine Jacobson in constructive possession of the money, the fact that the property was no longer in Fine Jacobson's hands precludes a claim of a retaining lien. In this area, possession is not nine-tenths, but ten-tenths of the law. "The general or retaining lien is dependent upon possession, and does not attach to property which is not in the hands of the attorney. Its very name, `retaining lien,' indicates that the property must be in the attorney's possession, or else he could not `retain' it." In re Sebring, 238 A.D. 281, 285, 264 N.Y.S. 379, 385 (N.Y. App. Div. 1933) (citations omitted); Kaplan v. Reuss, 113 A.D.2d 184, 495 N.Y.S.2d 404 (N.Y. App. Div. 1985) (retaining lien applies only to papers and property in possession of attorney and is extinguished when possession terminates other than by court order), aff'd, 68 N.Y.2d 693, 506 N.Y.S.2d 304, 497 N.E.2d 671 (1986). Unlike the retaining lien, however, the charging lien is not dependent upon possession. Dowda & Fields, P.A. v. Cobb, 452 So.2d 1140, 1142 (Fla. 5th DCA 1984).
[3] In Conroy, 392 So.2d at 937, the court held that:

"in order for an attorney to obtain a charging lien upon a judgment which involves personal property, it is unnecessary for him to prove that there was an agreement with the client for the proceeds to be paid from the recovery. Of course, the attorney must prove that he had a valid contract with the client to render services but this can be satisfied by a showing that when he undertook the representation, there was an implied understanding that the client would pay him a reasonable fee."
Conroy was cited with approval in Sinclair, Louis in support of the statement that "[t]here must also be an understanding ... that the payment is either dependent upon recovery or that payment will come from the recovery." 428 So.2d at 1385. The latter, of course, describes the contingent fee contract; the former merely describes the requirement, discussed infra, that there be a positive judgment or settlement producing tangible fruits for the client.
[4] In settlement cases, the attorney is no less entitled to have a properly asserted charging lien enforced by the court, but if the underlying proceeding has been closed, the attorney may be relegated to an independent suit in equity to enforce the lien. Where the funds sought to be impressed by lien are part of a recovery by judgment, the court retains jurisdiction to hear any motion affecting the judgment until it is fully executed, and the attorney may proceed in that suit to have his lien established. Where, however, there has been a settlement, the funds may be outside the custody of the court, making the assertion of a lien "before the close of the original proceeding," Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla. 1986), essential to maintenance of the right in the original action to enforce the lien against the settlement proceeds. But even if the attorney did not file notice of a charging lien in the original action preserving his right to proceed in that action, the attorney still has a charging lien; that lien, however, must be enforced in a separate suit in equity. Thus, in Sinclair, Louis, the trial court denied the attorney's motion to enforce a charging lien against the client's settlement proceeds without prejudice to his right "to bring an independent action for enforcement of the liens." Sinclair, Louis, 428 So.2d at 1384. Because, however, the attorney had filed a notice of intent to enforce the lien before the settled dissolution case was dismissed in the trial court, the supreme court held that the lien had been properly perfected so that it was enforceable in the original action and did not require an independent suit for enforcement.

But what if the lien were not enforceable in the original action? As we have said, the performance of services and a resulting favorable judgment or settlement bring the lien into existence at common law. Thus, in Nichols v. Kroelinger, 46 So.2d 722 (Fla. 1950), an attorney secured a judgment for his client and allowed the judgment to lie dormant for eighteen years. The client died eleven years after the judgment, and not until after the statute of limitations for administration of the estate had passed did the attorney move for the appointment of an administrator of the estate to collect his fee. Though barred by the statute of limitations from proceeding against the estate, the attorney could, the court held, move against the still unexecuted judgment then held by the decedent's wife to satisfy his lien for services: "The lien inheres in the judgment so long as it is kept alive, regardless of who holds it." Id. at 724. It appears, then, that there is no time limit per se on the assertion of a lien. However, the enforcement of a lien being an equitable remedy, diligence will likely be required. Id.
[5] This requirement that there be proceeds is much the same where real property is recovered by an attorney for his client. In such a case, the attorney's lien, as its name implies, is seen as a charge upon the real property, Nichols v. Kroelinger, 46 So.2d 722 (Fla. 1950); Scott v. Kirtley, 113 Fla. 637, 152 So. 721 (1933), not as an interest in it, and unless the real property is sold and proceeds are realized, the attorney has nothing to claim a portion of. In cases involving recovery of real estate, an express or implied agreement for recovery of fees out of the proceeds of the judgment is necessary before a court may impose a charging lien upon the property. Billingham v. Thiele, 109 So.2d 763 (Fla. 1959). Cf. Conroy v. Conroy, 392 So.2d 934 (declining to extend above contract requirement to cases involving personal property). Such an agreement operates as an "equitable assignment" and creates a lien. Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (Fla. 1945); accord United States v. Transocean Air Lines, Inc., 356 F.2d 702 (5th Cir.1966). An attorney anticipating a judgment or recovery in the form of an interest in real property would be well advised to provide for a lien on such property in the fee agreement with his client. See generally Nussbaum, The Charging Lien: Litigating Client Fee Disputes, 58 Fla.B.J. 114 (1984). But for the proposition that, even in the absence of contractual agreement, an attorney has a lien for services on realty recovered for his client, see Note, 4 U.Fla.L.Rev. at 61, citing Scott v. Kirtley, 152 So. 721, and Alyea v. Hampton, 112 Fla. 61, 150 So. 242 (1933).

Likewise, in dissolution actions, property awarded as an equitable distribution of property rights is a "proceed" to which a lien can attach, see Conroy v. Conroy, 392 So.2d 934 (Fla. 2d DCA 1980), but an alimony award designed to provide "daily sustenance and the minimal necessities of life," Dyer v. Dyer, 438 So.2d 954, 955 (Fla. 4th DCA 1983); Zimmerman v. Livnat, 507 So.2d 1205 (Fla. 4th DCA 1987), and child support payments, Brake v. Sanchez-Lopez, 452 So.2d 1071 (Fla. 3d DCA 1984), are not awards against which the lien can be enforced. In a paternity action, however, a lien against an award for medical and other expenses may, if the mother is not impecunious, be proper. Id. An attorney taking on pro bono representation of an indigent client in a dissolution action may not obtain a lien unless the client waives the non-fee status. Nussbaum, supra, at 139 n. 5.
[6] Although there is no question of the timeliness of Fine Jacobson's claim of lien in the present case, the precise function of the "timely notice" requirement found in Sinclair, Louis, 428 So.2d 1383, and Daniel Mones, P.A., 486 So.2d 559, is murky.

The usual procedure by which to assert a claim of lien is to file some form of notice, or petition, for lien  most logically seen, perhaps, as the vehicle by which the court's equity jurisdiction is invoked to establish the attorney's theretofore inchoate lien. Establishment of a lien not only declares the attorney's right to participate in the recovery, but also confers standing upon the attorney to intervene in the action in his own name, Miller, Attorneys' Charging Liens, 56 Fla.B.J. 737 (1982), to continue a suit in certain circumstances, Miller v. Scobie, 152 Fla. 328, 11 So.2d 892 (1943), and to appeal if, for example, following the attorney's discharge, the client fails to appeal an attorney's fee issue and the attorney has thus been deprived of notice and hearing on the issue, Fickle v. Adkins, 385 So.2d 1141 (Fla. 3d DCA 1980).
However, it is questionable whether the "notice" requirement is, or should be, regarded as truly jurisdictional, that is, whether absent notice to a client during the action, an attorney may not proceed in the original action to resolve his fee dispute. It may be that this notice is critical to a discharged or withdrawing attorney, who is, perforce, no longer a part of the litigation and must take affirmative steps to retain his position vis-a-vis the client and the outcome; notice in such a case both alerts a successor attorney to a potential reduction of his own fee and "reminds" a client that discharge or withdrawal of an attorney does not relieve the client of his obligation to that attorney. However, Florida cases involving claims other than by discharged or withdrawing attorneys (that is, claims by attorneys who remain throughout the proceedings) fail to exhibit a unified view of the purpose underlying the notice requirement. See, e.g., Daniel Mones, P.A., 486 So.2d at 561 ("Simply filing suit gave his former clients insufficient notice."), id. at 563 ("In the charging lien context, the notice requirement is primarily for the benefit of third parties who may have occasion to be affected by the judgment... .") (Boyd, C.J., concurring in part and dissenting in part); Sinclair, Louis, 428 So.2d 1383 (notice timely because issue before court prior to dismissal of action); Forman v. Kennedy, 22 So.2d 890 (after lien properly perfected by notice or otherwise, compromise cannot prejudice attorney's right to enforce judgment to extent of lien); Dowda & Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984) (notice of intent to claim lien does not establish lien nor give adequate constructive notice to parties dealing with client with respect to judgment); Brake v. Sanchez-Lopez, 452 So.2d 1071 (notice enables award to be enforced against parties who, after notice, avoided lien) [emphasis supplied in all cases].
Jurisdictions that include a notice requirement in their statutes governing attorney's liens generally do so to protect the rights of the attorney, see, e.g., Kleager v. Schaneman, 212 Neb. 333, 322 N.W.2d 659 (1982) (statute requires notice to party in possession of fund in order to prevent payment by debtor to creditor in ignorance of attorney's rights); Rhoades v. Norfolk & W. Ry. Co., 78 Ill.2d 217, 35 Ill.Dec. 680, 399 N.E.2d 969 (1979) (notice to party against whom client has claim); Passer v. U.S. Fidelity & Guaranty Co., 577 S.W.2d 639 (Mo. 1979) (notice to defendants), or to provide a means of perfection of the lien in order to establish its priority, see In re Marriage of Mann, 697 P.2d 778 (Colo.Ct.App. 1984), or to protect other third parties, see Brandywine Savings & Loan Association v. Redevelopment Authority, 100 Pa.Commw. 294, 514 A.2d 673 (1986) (inequitable to recognize lien where attorney failed to notify those who wanted to intervene).
[7] However, if an attorney has not claimed a charging lien or there are no proceeds to which a lien can attach, he nonetheless retains the right to sue the client on the contract in an action at law in which the client is entitled to a jury trial. Barranco, Darlson, Daniel & Bluestein, P.A. v. Winner, 386 So.2d 1277 (Fla. 3d DCA 1980); Worley v. Phillips, 264 So.2d 42 (Fla. 2d DCA 1972); Riddle Airlines v. McGahey, 144 So.2d 92 (Fla. 3d DCA 1962); Chaachou v. Chaachou, 122 So.2d 24 (Fla. 3d DCA 1960). However, mere withdrawal or discharge of the attorney before litigation is ended does not deprive him of his right to enforce a claim of lien asserted before the close of the litigation. de La Cruz v. Brown, 338 So.2d 245 (Fla. 3d DCA 1976); Ryder v. MacKenzie, 235 So.2d 36 (Fla. 3d DCA 1970).